**AAB JOINT VENTURE** א. א. ב.
ABB SUSA\ A. ARENSON\ BARAN GROUP אבב – סוסה/ א. ארנסון/ קבוצת ברן

NACHSHONIM STORAGE BASE, ELAD פרוייקט בסיס אחסון נחשונים, אלעד

08 July 2004 Ref. USACE/04-0544

Resident Engineer
United States Army Corps of Engineers
Nachshonim Resident Office
Unit 7228, Box 42
APO AE 09830
cc: William D. Mills, Contracting Officer VIA Fax (5 pgs): 49 – 611 – 816 - 2618

RE: DACA90-01-C-0043
NACHSHONIM STORAGE BASE

SUBJECT: Request for Equitable Adjustment Erroneous Rejection of Alternate Paint System

Dear Sir,

In line with the partnering concepts expressed at the AAB JV / USACE 25 May 2004 meeting, the AAB JV requests a time extension for the delay it has experienced because of the U.S. Government's erroneous rejection of paint system alternates and improper reimposition of the specified thickness requirement. As a result of these actions, which constitute constructive changes under the Changes Clause of the Contract, the AAB JV is entitled to a compensable time extension and associated extended performance costs from 09 December 2003 through 30 April 2004 (143 days) and the difference in costs between the rejected alternate and the approved panel paint system. At this point, the AAB JV is requesting a time extension only.

The AAB JV requests consideration, in accordance with Contract Clause, Section 00700-33, FAR 52.243-4, Changes, for an equitable adjustment to the project completion date.

This request relates solely and exclusively to the period identified above. The AAB JV expressly reserves its rights to submit a claim and/or REA for additional costs for the period from December 9, 2003 through April 30, 2004 and the difference in cost between the rejected alternate and the approved panel paint system. The AAB JV also reserves the right to submit a claim and/or REA, with respect to other issues related to the panel painting specification.

We look forward to amicable discussions on these issues at our pending meeting at the end of July 2004.

Sincerely,

S. D. Keeney
Project Director

Attachments:
1. Request for Equitable Adjustment - Erroneous Rejection of Alternate Paint System
2. Project Schedule Analysis – 143 Calendar Day Delay Due To Erroneous Rejection of Alternate Paint System



משרד האתר: ת"ד 37, ראש העין, טל: 03-933-1473 פקס: 03-933-1366
J.V.office: P.O.Box 37, Rosh HaAiyn 68100 (ISRAEL), TEL 972-3-933-1473 FAX 972-3-933-1366

A.A.B JOINT VENTURE
ABB SUSA\ A. ARENSON\ BARAN GROUP
א.א.ב. - יזם משותף
אבב – סוסה/ א. ארנסון/ קבוצת ברן
NACHSHONIM STORAGE BASE, ELAD
פרוייקט בסיס אחסון נחשונים, אלעד

# Request for Equitable Adjustment

# Erroneous Rejection of Alternate Paint System

## I. Summary of Request

ABB SUSA / A. Arenson / Baran Group ("AAB JVAAB JV") requests a time extension for the delay it has experienced because of the U.S. Government's erroneous rejection of paint system alternates and improper reimposition of the specified thickness requirement. As a result of these actions which constitute constructive changes under the Changes Clause of the contract, the AAB JV is entitled to a compensable time extension and associated extended performance costs from December 9, 2003 through April 30, 2004 and the difference in costs from the rejected alternate and the approved panel paint system. This request relates solely and exclusively to the period identified above. The AAB JV expressly reserves the right to submit a claim and/or REA for additional costs for the period from December 9, 2003 through April 30, 2004 and the difference in cost between the rejected alternate and the approved panel paint system. The AAB JV also reserves the right to submit a claim and/or REA, with respect to other issues related to the panel painting specification.

## II. Pertinent Facts

On December 2, 2003 the AAB JV submitted RFI C-0071 which stated "Prior to making a new order (of panels) concern is being raised as to the suitability of the existing specification relative to the thickness of the PVDF prime coat, PVDF layer, ...". The AAB JV requested that the Government and its consultants provide confirmation that the panel coating requirement was correct as stated in the specification.

The Government responded by letter dated December 9, 2003 and stated in pertinent part:

> I am willing to review alternate solutions that are structurally sound provided the metal skin in (is) warranted for twenty years.

The Government's statement that it would review structurally sound alternates if warranted for twenty years, clearly establishes that the Government was willing to consider alternates and that the only criteria for the review of the alternates would be structural soundness and compliance with the twenty year warranty, not compliance with the 10/40 micron thickness requirement.

In reliance upon the Government's willingness to review alternates the AAB JV made an exhaustive search to identify a structurally sound paint system with a twenty year warranty. The AAB JV's search for such a system was conducted expeditiously and in reasonable reliance on the COE's statement that it would review such alternates without demanding compliance with the thickness requirement.

The AAB JV completed its search and on January 26, 2004 submitted RFI 0181 to the Government. The RFI stated:

משרד האתר: ת"ד 37, ראש העין, טל: 03-933-1473 פקס: 03-933-1366
J.V.office: P.O.Box 37, Rosh HaAiyn 68100 (ISRAEL), TEL 972-3-933-1473 FAX 972-3-933-1366

> The AAB JV has investigated several sources of insulated panels and determined that Thyssen Krupp and Italpannelli offer high quality panels and can provide shipment to the site within a reasonable time frame providing the panels are standard products within their organization. Both manufacturers provide a 20 year warranty on the metal skin.

The RFI described in detail the Italpannelli (La Magona) 20/20 micron (Duracor 40) paint system and the Thyssen Krupp 5-primer /20 PVDF color coat/15 PVDF clear coat (total 40 microns). The RFI also noted that both panels would be a modification to the specified thickness.

By letter dated January 30, 2004 the Government stated that the Italpannelli panels were "not acceptable" based upon the conclusion that the panel had 70% resin, rather than 80%. However, the specifications do not contain a resin requirement and, in the absence of a demonstration that this slight difference would render the panel structurally unsound for this application, the Government's rejection was erroneous.

The Government's dismissive attitude toward Thyssen Krupp panel was also erroneous. The Government had previously stated that this system may be an alternate that it would be willing to review if it was warranted as required and was structurally sound. In addition, when the COE - AAB JV visited Thyssen Krupp the paint system proposal was increased to 15/20/15, or a total of 50 microns. Accordingly, this system met the 50 micron requirement, was structurally sound, and included the required twenty year warranty. Thus, it too should have been approved.

In summary, contrary to its professed willingness to review alternates which the AAB JV reasonably relied upon, the Government rejected and/or dismissed both proposed panels without justification. The Duracor 40 system was a reasonable alternate, structurally sound and warranted for twenty years. The Government's dismissive attitude toward the Thyssen Krupp 15/20/15 was also clearly erroneous since it was structurally sound, carried a 20 year warranty and met the 50 micron thickness requirement.

Therefore, the Government's formal rejection of the Duracor 40 and its criticism of the Thyssen Krupp panel were erroneous and constitute a constructive change entitling the AAB JV to an equitable adjustment under the Changes Clause of the contract.

Further, the Government's subsequent conduct compounded the problem to the AAB JV's prejudice. In its March 25, 2004 letter the Government alluded to the fact that the 10/40 thickness requirement constituted "minimum specifications." Thereafter, the Government's April 12, 2004 letter confirmed, for the first time, that it was the Government's position that the specification stated a 50 micron minimum thickness requirement and directed the AAB JV to submit for its approval, within 10 days from receipt of the letter an "acceptable panel system that meets contract requirements."

The Government's belated assertion of this interpretation must fail for two reasons.

The pertinent part of the specification states:

> The walls and roofs exterior facing shall not be less than 0.55 mm. galvanized trapezoidal steel SAE 1020,

painted with ppvdf (primer paravinil de fluor 10+40 micron) coating (50 microns).

The only reasonable interpretation of this specification is that the steel sheet is a "minimum", not the thickness of the paint system. The plain meaning of the provision is that the walls and roofs exterior facing should not be less than 0.55 millimeters. The insertion of a comma after "SAE 1020" makes it self evident that the "shall not be less" language does not apply to the 10 + 40 (50 micron) paint thickness requirement.

In addition, the Government's letters prior to March 25, 2004 did not assert this position. Such contemporaneous conduct prior to a dispute arising is given great, if not controlling weight. Finally, if there is an ambiguity it was created by the Government and should be construed against the Government.

The Government's argument must also fail for an additional reason. The Government by its conduct from December 9, 2003 through March 25, 2004 waived its right to require a 10 + 40 micron paint thickness. As noted above, during this period of time it was the Government's position that it would consider alternates that were structurally sound and carried a 20 year warranty, without consideration of paint thickness.

Here, whether the specification was ambiguous or not, the Government has administered the contract in such a way as to reasonably give the AAB JV the impression that the 10 + 40 paint thickness requirement had been suspended or waived. In such circumstances, the requirement can not be suddenly revived to the prejudice of the AAB JV.

Accordingly, the erroneous reimposition of the constructively waived paint thickness requirement also constitutes a constructive change. Thus, the period from March 25, 2004 through April 30, 2004 constitutes an additional period of Government-caused delay.

## III. <u>Conclusion</u>

In reasonable reliance on the Government's representation that it would review alternates the AAB JV made well-documented RFIs and submitted correspondence which addressed all Government concerns pertaining to acceptable alternates. The period from December 9, 2003 to March 25, 2004 is compensable because contrary to its professed willingness to review alternate solutions, the Government erroneously rejected complying alternates.

Commencing March 25, 2004, the Government abruptly rescinded its position that it would consider alternates. Such action was improper since the Government cannot suddenly revive a previously waived requirement to the prejudice of the AAB JV. Therefore, the Government is responsible for additional compensable delay from March 25, 2004 through April 30, 2004, the date of Government approval of the La Magona 20/20/20 micron paint system, which exceeded the requirements of the specifications and is an unproven, non-standard product.

Accordingly, the Government's erroneous rejection of complying alternates and reimposition of the constructively waived paint thickness requirement constitute constructive changes entitling the AAB JV to an equitable adjustment in price and time under the Changes Clause of the contract.

## AAB JV – Nachshonim Storage Base Project

## 143 Calendar Day Delay Due To Erroneous Rejection of Alternate Paint System

